UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAYLEE SMARR

        Plaintiff,                           Case No. 1:25-cv-12588

v.                                          Honorable Thomas L. Ludington
                                                 United States District Judge

MARY TALASKA and COUNTY OF ALPENA

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT ALPENA COUNTY'S MOTION TO DISMISS, DISMISSING ALPENA COUNTY AND REMANDING REMAINING CLAIMS TO ALPENA COUNTY CIRCUIT COURT**

On August 19, 2025, Defendants removed this case from the Alpena County Circuit Court to this Court. Plaintiff Kaylee Smarr purchased real estate property located in Alpena, Michigan, from the Defendant, Ms. Mary Talaska, in September of 2020. Ms. Talaska financed the sale through a land contract. Despite the volume of pleadings and exhibits provided by the Parties, a copy of the land contract is not included. Importantly, however, the Parties' filings reflect that the land contract was recorded at the Alpena County Register of Deeds at Liber 537, Page 446.

Sometime in the fall of 2022, Ms. Talaska initiated forfeiture proceedings in the 88th District Court in Alpena, Michigan, alleging that Smarr defaulted on her obligations under the land contract. On October 19, 2022, the District Court entered a Judgment of Possession after Land Contract Forfeiture (the "Judgment"). The Judgment—entered with the consent of the Parties—provided that (1) the land contract was forfeited, (2) Talaska was entitled to a money judgment for $1,431.67 to be paid within ninety days with an additional $1,413.03 to be paid within thirty days, (3) Smarr, as a condition of "cure," was to prospectively pay $750.89 per month and the property

taxes when due. Ultimately, the state court was informed by Ms. Talaska or her attorney that Smarr had *not* performed the conditions of cure, and an order was entered evicting her from the property.

But Ms. Talaska's conduct is not before the Court today. Instead, this Court must determine whether Defendant Alpena County may be liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), to Plaintiff for her wrongful forfeiture to Talaska and her eviction. Plaintiff contends that Defendant County of Alpena violated her Fourteenth Amendment procedural due process rights when the state district court located in Alpena County deprived her of the property interest in her home without notice or a hearing. While Ms. Talaska's conduct may have deprived the Plaintiff of her due process and statutory rights, Plaintiff has not pleaded facts that would render Defendant Alpena County liable under *Monell*. Defendant Alpena County's Motion to Dismiss will thus be granted. And because the Motion to Dismiss will be granted, the only remaining claims are state-law claims. This Court will decline to exercise supplemental jurisdiction over those remaining claims and remand the case to state court.

## I.

### A.

An overview of "land contracts" and Michigan law governing forfeiture in the event of default is necessary to understand Plaintiff's Complaint.

First, a land contract is a contract for the sale of an interest in real estate. 1 JOHN G. CAMERON JR., *Michigan Real Property Law, Principles and Commentary* 602 (3d ed. 2005). Land contracts include provisions for the sale of an interest in real estate that require payment of the purchase price in installments. *Id.* There is no promissory note or mortgage involved between the seller (referred to as the vendor) and the buyer (referred to as the vendee). *Id.* In land contracts, the purchase price is financed by the seller, and legal title remains with the vendor until the buyer performs all contract obligations, while equitable title passes to the vendee. *Id.*

If a vendee fails to pay or timely perform their obligations, "the vendor of a land contract giving the vendee a right to possession may not forfeit the contract on a basis of the default itself." *Id.* at 620. Instead, the vendor must seek a declaration of forfeiture from a state district court. *Id.* A notice of forfeiture must then be served separately to all parties to the contract. *Id.* Once a notice of forfeiture is served, the vendee's right to enforce the contract is terminated, or at least suspended until the contract default is cured by payment of the arrearage. *Id.*

But before all that, there must be notice to the vendee of an intent to forfeit and an opportunity to cure the default, which must initially be determined from the parties' contract.[1] *Id.* The Summary Proceedings Act requires a cure period of at least fifteen days following service of a forfeiture notice under MICH. COMP. LAWS § 600.5728. *Id.* at 621.

But if not cured, a land contract vendor may seek to forfeit the vendee's interest in a land contract and retake possession of the property in satisfaction of the debt.[2] *Id.* at 622. In doing so, the vendor will generally seek forfeiture of the contract and possession of the property under MICH. COMP. LAWS § 600.5701. *Id.* The vendor may recover property following a forfeiture, but only if the contract expressly gives the vendor the right to declare a forfeiture for a material breach. MICH. COMP. LAWS § 600.5726. Proceedings in district court must comply with MCR 4.202.[3] CAMERON, *Michigan Real Property Law, Principles and Commentary* 622.

But a vendor may not recover possession under § 600.5726 unless the vendee —or whoever holds possession under the vendee—has been served with written notice of forfeiture and has failed

---

[1] Absent a contractual requirement, no notice of intent to forfeit is required. *See* CAMERON, *Michigan Real Property Law, Principles and Commentary* 621.

[2] Contrast the forfeiture proceeding with that of foreclosure, which the vendor might utilize to enforce the vendee's obligation to pay the full purchase price outlined in the land contract. *See* CAMERON, *Michigan Real Property Law, Principles and Commentary* 628–34.

[3] This includes MCR 4.202(K)(2), which is at issue in this case.

to cure the default. *Id.* The notice may be served by delivering it personally to the vendee, by delivering it at the premises to a member of the vendee's family or household or an employee of suitable age and discretion with a request that it be delivered to the vendee, or by sending it to the last known address of the vendee or person holding possession under the vendee by first-class mail. *Id.* at 623. After service of the notice of forfeiture and the passage of the requisite cure period, the proceeding may be commenced to recover possession of the property. *Id.*

**B.**

With that in mind, the Court moves sequentially to the next series of events.

As earlier noted, the Judgment provided that Plaintiff was to pay Ms. Talaska $1,413.03, within thirty days to reimburse her, and pay a total amount of $1,431.67 within ninety days of the Judgement. ECF No. 1 at PageID.11. The Judgment further ordered Plaintiff to pay Ms. Talaska an additional $750.89 per month beginning in October 2022, and to pay property taxes when due. *Id.* at PageID.25.

On February 21, 2023, through an Application and Order of Eviction filed with the district court, Ms. Talaska, or someone on her behalf, represented that Plaintiff had *not* complied with the Judgment by: (1) not paying her past due amount of $1,431.67,[4] and (2) by cancelling her homeowner's insurance.[5] *Id.* at PageID.29. But Plaintiff maintains that she not only paid the required $1,413.03 within 30 days as required by the Judgment, but she also paid the $750.89 every month from October 2022 through March 2023 via direct deposit to Ms. Talaska. *Id.* at PageID.12. She also asserts that the property was properly insured for the entirety of the required

---

[4] Seemingly, the Application for Eviction notes that Plaintiff had paid a sum of $1,413.03. *See* ECF No. 1 at PageID.29.

[5] The signature on the Application is not identifiable by this author. *See* ECF No. 1 at PageID.29.

time. *See id.* Of course, if she were correct, the representations made in the Application would be materially false.

Michigan Court Rule 4.202(K)(2) provides that "[a]n order of eviction may not be issued if any part of the amount due under the judgment has been paid unless a hearing has been held after the defendant has been given notice and an opportunity to appear." But Plaintiff alleges that she was never given notice or opportunity to appear, and, in fact, she was never notified of her eviction from the property until *after* the order had been entered. ECF No. 1 at PageID.14. Indeed, Plaintiff's attorney was also not informed of the eviction proceedings. *Id.* This may have been because Ms. Talaska allegedly represented to the 88th District Court that Plaintiff had abandoned the property. *Id.* at PageID.12. Plaintiff asserts that Ms. Talaska knew that she and her fiancé had temporarily moved to North Dakota for work, but anticipated returning. *Id.* at PageID.13.

Still, the Application and Order of Eviction was signed, and an Order of Eviction was executed on Plaintiff on March 7, 2023. *Id.* Two days later, Ms. Talaska allegedly allowed "people to go through the subject property and take whatever items they wanted" and "held a yard sale— selling [Plaintiff's] personal property." *Id.*

While not clear from the Complaint, Plaintiff eventually learned of her eviction and sought relief under MCR 2.612. The 88th District Court heard the motion on July 17, 2023, during which the court acknowledged that Plaintiff should have had notice and an opportunity to be heard. *Id.* at PageID.50–52. On December 8, 2023, the 88th District Court found that the Order of Eviction should not have been issued and denied, retroactively, Ms. Talaska's Application and Order of Eviction. *Id.* at PageID.15, 57. But by that time, Ms. Talaska had already sold the property to Denise and Amirhoushang Dabbage of Livonia, Michigan, on April 28, 2023. *Id.* at PageID.59.

The warranty deed recorded at Liber 552, Page 523, does not include Ms. Talaska's husband's signature, nor is there any reference to the prior recorded land contract. *Id.*

### C.

On July 22, 2025, Plaintiff filed this Complaint with the Alpena County Circuit Court. *Id.* at PageID.2. On August 19, 2025, Defendant Alpena County removed the case to this Court. *See id.* at PageID.2–3.

While Plaintiff's Complaint alleges ten Counts, only one (Count X) is relevant at this juncture. Under Count X, Plaintiff asserts that Defendant Alpena County violated Plaintiff's procedural due process rights under the Fourteenth Amendment when it:

    a. Issued an eviction order despite partial satisfaction of the judgment;

    b. Failed to provide notice or an opportunity to be heard;

    c. Executed the Order of Eviction, which allowed Defendant Talaska to remove [Plaintiff's] property without lawful authority;

    d. Failed to follow state statutes and court rules governing eviction and property removal.

*Id.* at PageID.22. On August 21, 2025, Defendant Alpena County moved to dismiss the claim against it. ECF No. 5.

### II.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court accepts all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, at this stage of litigation, courts generally assess only the facts pleaded in the plaintiff's complaint—not evidence elsewhere in the record—and the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79; *see also Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020); *cf. Thomson v. Peterson*, No. 1:24-CV-11761, 2025 WL 2797146, at *4 (E.D. Mich. Sept. 30, 2025) (explaining when courts can look beyond the face of the complaint). But the court need not accept the complaint's legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

As a threshold matter, Plaintiff asserts in her Response to Defendant's Motion to Dismiss that Defendant did not comply with E.D. Mich. LR 7.1. ECF No. 8 at PageID.160. E.D. Mich. LR 7.1(a)(1) states in part:

> [T]he movant must comply with Federal Rule of Civil Procedure 37(a)(1). Otherwise, the movant must ascertain before filing whether the contemplated motion or request under Federal Rule of Civil Procedure 6(b)(1)(A) will be opposed. *To accomplish this, the movant must confer with the other parties* and other persons entitled to be heard on the motion in good faith and in a manner that reasonably explains the basis for the motion and allows for an interactive process aimed at reaching agreement on the matter or those aspects of the matter that can be resolved without court intervention, given the nature of the contemplated motion. *The conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter.* If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.

(emphasis added). But Defendants waited less than twenty-four hours after reaching out for concurrence before filing their Motion. ECF No. 8 at PageID.160. Defendants are reminded of the importance of earnestly seeking concurrence with opposing parties for judicial efficiency.

### IV.

A.

Plaintiff asserts that Defendant County of Alpena is liable under *Monell*. In *Monell*, the Supreme Court established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983. 436 U.S. at 649. That is because under *Monell*, municipalities are considered "persons" subject to suit under § 1983 for civil rights violations. *Id.* at 690. And municipalities cannot be held liable under § 1983 for acts of their employees based on the doctrine of *respondeat superior* or for other forms of vicarious or derivative liability. *Id.* at 692. This is because § 1983 requires a showing that the defendant "subject[ed] or cause[d a plaintiff] to be subjected" to a deprivation of a federal right, a requirement that "cannot be easily read to impose liability vicariously on governing bodies solely based on the existence of an employer-employee relationship with a tortfeasor." *Id.*

So a plaintiff may hold a municipal entity responsible under § 1983 only for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692–94). For example, the Sixth Circuit has clarified that "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted). Thus, "[e]stablishing municipal liability under 42 USC § 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality." *Johnson v. Vanderkooi*, 918 N.W.2d 785, 791 (Mich. 2018) (citing *Monell*, 436 U.S. 658 at 690–91).

Importantly, Defendant also argues that the 88th District Court, its judicial officers, court clerks, and the Sheriff's Department in Alpena are all entitled to either absolute or Eleventh

Amendment sovereign immunity, *see* ECF No. 5 at PageID.92, seemingly in the event Plaintiff sought leave to amend her Complaint and then include those actors as parties to the suit. *See id.* at PageID.93 But Plaintiff did not seek leave to amend her complaint. The only Defendants to the suit are Defendant Alpena County and Ms. Talaska. *See* ECF No. 1 at PageID.9–10. Still, some discussion of the interplay between immunity doctrines and *Monell* liability is helpful.

For starters, Judges enjoy judicial immunity from suits arising from the performance of their judicial functions. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (emphasis added). And the Supreme Court has held that state judges are absolutely immune from liability under § 1983. *Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)). At the same time, state courts—and, when sued in their official capacity, their judges—are "arm[s] of the state" entitled to Eleventh Amendment sovereign immunity. *See Pucci v. Michigan Supreme Ct.*, 601 F. Supp. 2d 886, 897 (E.D. Mich. 2009). In short, the interplay between these two immunity doctrines is as follows: (1) state courts—and their judges—enjoy Eleventh Amendment immunity in their official capacity, and (2) enjoy absolute judicial immunity in their individual capacity.[6] *See id.* at 898.

Similarly, court officers, like clerks, enjoy absolute immunity, like judges, from suit on claims arising out of the performance of their quasi-judicial functions. *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). And, like state judges, state court clerks enjoy sovereign immunity in official-capacity suits. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 38–39 (2021).

But these immunities apply only to judges and judicial officers and do not extend to municipalities they may serve for purposes of *Monell* liability. *See Monell*, 436 U.S. 658 at 699–700. ("[M]unicipalities can assert no reliance claim which can support an absolute immunity.").

---

[6] Still, "[a] judge is not entitled to judicial immunity for performing non-judicial acts or acting completely without jurisdiction." *Pucci*, 601 F. Supp. 2d at 898.

Thus, if Plaintiff had amended her Complaint to add the 88th District Court, the judge of the court, the clerk, or the Sheriff's department, those groups may have been entitled to either judicial or Eleventh Amendment sovereign immunity; but Defendant Alpena County would not be immune for *Monell* liability and this lawsuit.

**B.**

With these concepts in mind, the Court moves to Plaintiff's claims against Defendant Alpena County.

Plaintiff alleges that Defendant Alpena County violated her constitutional right to procedural due process under the Fourteenth Amendment by, among other things, evicting her from her property without notice or a hearing. *See* ECF No. 1 at PageID.22. In the end, Plaintiff's due process rights were violated, but not by Defendant Alpena County.

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall deprive . . . any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND XIV. Procedural due process claims are examined under a two-part analysis: (1) whether the Plaintiff's interest at stake is a protected liberty or property right under the Fourteenth Amendment, and (2), if so, "whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002); *see e.g., Bd. of Regents v. Roth*, 408 U.S. 564, 570–71, (1972); *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).

"Property interests are not created by the Constitution." *Thomas*, 304 F.3d at 576. "Instead, they are 'created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577). The Michigan Supreme Court has held that there is a vested interest, under state and federal law, in the possession and use of real estate protected by due process. *See Bonner v. City of Brighton*, 848 N.W.2d 380, 391 (Mich. 2014) ("Explicit in our state and federal caselaw is the recognition that an individual's

vested interest in the use and possession of real estate is a property interest protected by due process."); *see also Dow v. Michigan*, 240 N.W.2d 450 (Mich. 1976). Thus, Plaintiff had a protected interest in the property she owned before she was evicted under the Fourteenth Amendment.

Next, this Court must determine whether Plaintiff's property interest was "contravened" by Defendant Alpena County because she was not granted notice or a hearing before her eviction. "It is well-established that possessory interests in property invoke procedural due process protections." *Thomas*, 304 F.3d 563 at 576 (citing *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972)). And due process generally requires notice and a hearing before eviction. *Id.* (citing *Fuentes*, 407 U.S. at 82); *see also Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir.2000) ("When a plaintiff has a protected property interest, a predeprivation hearing of some sort is generally required to satisfy the dictates of due process."). Thus, because Plaintiff alleges facts indicating that she was not given a notice or a hearing before she was evicted, ECF No. 1 at PageID.12, 15, Plaintiff has suffered a violation of her statutory rights and her procedural due process rights under the Fourteenth Amendment.[7]

Because Plaintiff suffered a constitutional violation of her procedural due process rights, the inquiry shifts to whether Plaintiff has pleaded facts sufficient to demonstrate that Defendant Alpena County is liable under *Monell*. She has not.

Municipal liability can be demonstrated in several ways, including (1) showing that the City has a custom or practice of tolerating or permitting constitutional violations, (2) that it failed to properly train and supervise employees, or (3) that a high-ranking policymaker ratified a

---

[7] Seemingly, Defendant Alpena County does not challenge Plaintiff's assertion that she was deprived her procedural due process rights by the court or Ms. Talaska before eviction. *See generally* ECF Nos. 5; 9.

subordinate's unconstitutional action. *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 518 (E.D. Mich. 2020), *order clarified*, No. 20-12363, 2020 WL 8575150 (E.D. Mich. Sept. 16, 2020) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Plaintiff appears to argue a failure-to-train theory of municipal liability. *See* ECF No. 8-1 at PageID.181. Plaintiff argues that Defendant Alpena County "failed to implement adequate policies, supervision, or training protocols for deputies and court staff tasked with enforcing eviction orders." *Id.* In particular, Plaintiff argues that the Application and Order of Eviction Form, ECF No. 1 at pageID.29, contains a "clear facial trigger" in the form of an "amount paid" field that, under MCR 4.202(K)(2),[8] required confirmation that a hearing had occurred before eviction. ECF No. 8-1 at PageID.181. Plaintiff contends that there was "[n]o training or procedural mechanism requir[ing] personnel to pause, verify, or flag such orders before eviction" by Defendant Alpena County. *Id.*

To succeed on a failure to train or supervise claim, Plaintiff must prove the following: "(1) the [County's] training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's *deliberate indifference*; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (emphasis added).

Under a failure-to-train theory, deliberate indifference can be demonstrated in two different ways. The Supreme Court has stated generally that the risk of the municipality's failure to train or supervise must be so obvious—either (1) because of a pattern of similar violations, or (2) in rare cases, because the need for training was so evident that failing to provide any training amounts to

---

[8] MCR 4.202(K)(2) states that an "order of eviction may not be issued if any part of the amount due under the judgment has been paid unless a hearing has been held after the defendant has been given notice and an opportunity to appear."

indifference. *See Connick v. Thompson*, 563 U.S. 51, 61–63 (2011). As a result, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 60. Plaintiff seemingly argues both theories to establish deliberate indifference.

Plaintiff's claims fail under the first theory because she has failed to show a pattern of similar violations of procedural due process resulting in eviction within Alpena County. The Sixth Circuit has stated that a failure-to-train claim requires a showing of prior instances of unconstitutional conduct, demonstrating that the municipality ignored a history of abuse and was on notice that the training in a particular area was deficient and likely to cause injury. *Burgess*, 735 F.3d at 478 (citation omitted). Plaintiff has not pleaded that there were prior instances of similar misconduct. *See generally* ECF No. 1. Instead, Plaintiff argues that "discovery may ultimately reveal that Alpena County has engaged in a pattern or practice of executing eviction orders without verifying compliance with procedural requirements." ECF No. 8-1 at PageID.182. But "a court considering a motion to dismiss 'must focus only on the allegations in the pleadings.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). Thus, because Plaintiff has not pleaded facts indicating a pattern or practice of prior instances such that Defendant Alpena County would be on notice that training the district court's employees regarding checking certain "amount paid" fields in the Application and Order of Eviction Form was insufficient, she cannot demonstrate deliberate indifference under a failure to train theory of *Monell* liability.

Plaintiff also argues the second of the two deliberate indifference theories: that she can establish deliberate indifference by Defendant Alpena County as a "highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'"

*Winkler v. Madison Cnty.*, 893 F.3d 877, 903 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015)). But this theory is only available "'in a narrow range of circumstances.'" *Id.* Still, this theory only requires a "single violation of federal rights." *Shadrick*, 805 F.3d at 739.

But Plaintiff's grounds for this theory—the fact there was "[n]o training or procedural mechanism requir[ing] personnel to pause, verify, or flag such orders before eviction," ECF No. 8-1 at PageID.181—are found nowhere in the Complaint. *See generally* ECF No. 1. Instead, this argument first appears in Plaintiff's Response to Defendant Alpena County's Motion to Dismiss. *See* ECF No. 8-1 at PageID.181–82. As stated, courts considering a motion to dismiss must focus on the allegations in the pleadings. *Waskul*, 979 F.3d at 440. This does not include plaintiffs' responses to a motion to dismiss. *Id.* "If plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] . . . they have a readily available tool: a motion to amend the complaint under Rule 15." *Bates*, 958 F.3d 470 at 483. Plaintiffs cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Id.* Plaintiff did not plead in the Complaint that there was no training or procedure by Defendant Alpena County to require the state district court's employees to pause and flag whether someone had paid any amount that would require notice and a hearing under MCR 4.202(K)(2). Thus, Plaintiff cannot show deliberate indifference under either theory.

In sum, Plaintiff's *Monell* claim cannot succeed under her pleaded theory of liability. So Defendant's Motion to Dismiss, ECF No. 5, will be granted.

**V.**

Finally, "[u]nder 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir.2003) (citing *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)). Because the only remaining claims are state law claims, this Court declines supplemental jurisdiction over them and remand the case to state court.

### VI.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 5, is **GRANTED.**

Further, it is **ORDERED** that Count X of Plaintiff Smarr's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, Defendant County of Alpena is **DISMISSED** from this case.

Further, it is **ORDERED** that this court **DECLINES** to exercise supplemental jurisdiction over the remaining claims and **REMANDS** the remaining claims to Alpena County Circuit Court.

**This is a final order and closes the case before the Federal Court.**

Dated: January 8, 2026                               s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge